UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NIMBUS DATA SYSTEMS, INC.,<br>a California Corporation<br><br>    Plaintiff,<br><br>    v.<br><br>MODUS LLC and DOES 1-10,<br><br>    Defendants. | Case No. 14-cv-04192 NC<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 6 |

The merits of this case concern an alleged breach of contract. Defendant Modus LLC moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(2) and (3) for lack of personal jurisdiction and improper venue. Nimbus opposes the motion, arguing that this Court has specific jurisdiction over Modus. In the alternative, Nimbus requests that the Court permit discovery for the purpose of demonstrating general jurisdiction over Modus.

The Court finds that Nimbus has failed to meet its burden to make a prima facie showing of specific personal jurisdiction over Modus. Additionally, because Nimbus has not provided a sufficient basis to justify its request to conduct jurisdictional discovery, the Court DENIES that request. Because the Court finds that it does not have personal jurisdiction over Modus, and that it is in the interest of justice to transfer this case to a

district where personal jurisdiction can be exercised, the Court TRANSFERS this case to the United States District Court for the District of Columbia.

## I. BACKGROUND

Nimbus brings this suit against Modus on the theories of breach of contract and common counts to recover amounts due for computer equipment delivered to Modus pursuant to a May 2012 purchase order. Dkt. No. 1-1 at 5-8. Nimbus alleges that while it delivered products worth $120,570 to Modus, Modus did not pay $94,375 of that amount. *Id.* at 6.

In support of its motion to dismiss, Modus submitted a declaration stating that it is a limited liability corporation organized under the laws of the State of Maryland and having a principal place of business in Washington, D.C. Dkt. No. 6-1 ¶ 2. Modus is a wholly owned subsidiary of Modus eDiscovery Inc., a corporation organized under the laws of South Carolina and having a principal place of business in Washington, D.C. *Id.* In addition to its Washington, D.C. office, Modus has offices in West Virginia, Arkansas, Missouri, Wisconsin, Arizona, and Georgia. *Id.* ¶ 4.

Modus does not have offices or a mailing address in California. *Id.* ¶ 4. Modus is not registered or licensed to do business in California and does not have a registered agent for service of process in California. *Id.* ¶ 5. Modus does not own real property in California, and does not maintain any bank accounts in California. *Id.* ¶ 6. Modus does not lease or own servers, network equipment, or other internet hardware in California. *Id.* ¶ 7. Modus currently has approximately 118 employees, one of whom is in California but was not involved in the Nimbus agreement. *Id.* ¶¶ 3, 9. Historically, 1.8% of Modus's clients are located in California. *Id.* ¶ 8.

Modus has not engaged in marketing or advertising campaigns directed to California. *Id.* ¶ 10. Modus has engaged in only one advertising campaign, which could not be traced to any new leads or sales. *Id.* Modus maintains an informational website which describes Modus's services, provides background and educational information on its services, and provides contact information for Modus's offices. *Id.* ¶ 11. Modus does not provide its

services through the website, and the website does not have any interactive components. *Id.* The website is not targeted to California residents. *Id.*

With respect to the contract at issue here, the declaration submitted by Modus states that the documentation of the agreement is limited to two pages: a quotation sent from Nimbus to Modus on May 23, 2012, and a purchase order sent from Modus to Nimbus, dated May 24, 2012. Dkt. No. 6-2 at 3. Both documents were signed by an employee of Modus, working in Phoenix, Arizona. Dkt. No. 6-1 ¶ 12; Dkt. No. 6-2 at 2-3.

The computer equipment was delivered to Modus's data center in Reston, Virginia. Dkt. No. 6-1 ¶ 13. The computer equipment featured two controllers. *Id.* ¶ 12. According to Modus, Nimbus assured Modus that the controllers "could be used in a redundant 'fail-over' configuration." *Id.* Despite this assurance, Modus's technical staff could not get the two controllers to operate in the "fail-over" configuration. *Id.* ¶ 13.

Throughout 2012 and into 2013, neither Nimbus nor Modus was able to successfully resolve the problems with the controllers. *Id.* ¶ 14. In September 2013, Nimbus refused to continue attempts to repair the controller until Modus paid the remaining balance for the computer equipment, and Modus refused to pay the remaining balance until the computer equipment was fully functional. *Id.*

According to a declaration submitted by Nimbus, Modus made the first contact to inquire about purchasing from Nimbus. Dkt. No. 11-1 ¶ 5. The contact consisted of an email inquiry dated April 11, 2012, stating in full "please contact us ASAP." Dkt. No. 11-2. The sales quotation for Modus was created by a Nimbus employee in California. Dkt. No. 11-1 ¶ 6. The purchase order from Modus was also processed in California. *Id.* Modus's purchase included hardware systems that were manufactured in California and shipped from California to Modus. *Id.* ¶ 7.

In addition, Modus's purchase included software. *Id.* ¶ 8. A Software License Agreement was "provided" to Modus when it received the products from Nimbus. *Id.* The Software License Agreement gives the purchaser of the hardware product the license to use the software resident on that product on certain terms and conditions. Dkt. No. 11-3 at 1.

The Software License Agreement provides that it "is entered into as of the date Nimbus ships the Licensed System to Customer" and that "BY POWERING ON THE LICENSED SYSTEM, YOU ARE ENTERING INTO THIS AGREEMENT." *Id.* The Software License Agreement states that it "is governed by the laws of the State of California, without regard to the conflict of laws provisions thereof." *Id.* ¶ 11. The Software License Agreement further states that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement . . . shall be determined by final and binding arbitration in San Francisco, California." *Id.* ¶ 13.

Modus's purchase also included a contract for technical support for three years, titled the Product Support Agreement which was "also delivered" to Modus. Dkt. No. 11-1 ¶ 9. This Product Support Agreement provides that it "is entered into as of the date Nimbus ships the Supported System to Customer" and that "BY POWERING ON THE SUPPORTED SYSTEM, YOU ARE ENTERING INTO THIS AGREEMENT." Dkt. No. 11-4 at 1. The Product Support Agreement contains the same choice-of-law and arbitration provisions as those of the Software License Agreement quoted above. *Id.* ¶¶ 12, 14. The cost of support was $5,357 per year, while the whole contract was for $120,570. Dkt. No. 6-2 at 2.

Modus contacted Nimbus for support services after taking delivery of the products. Dkt. No. 11-1 ¶ 10. Each time it requested support, it accessed Nimbus's customer support portal, which is a computer system physically located in California. *Id.* Nimbus's support personnel who responded to Modus are also located in California. *Id.* Modus's support requests continued after this litigation commenced. *Id.*

Nimbus is a Delaware Corporation, with its principal place of business in South San Francisco, California. *Id.* ¶ 2. Nimbus has no office or employees in or near Washington, D.C. Nimbus's corporate records are in California, as are all of the employees and other personnel who would be potential witnesses in the dispute. *Id.* ¶ 11.

Nimbus filed this action in the Superior Court of California, County of San Mateo on August 13, 2014. Dkt. No. 1-1 at 5. In its complaint, Nimbus alleges that the case was

properly in that court because "the contract was to be performed here." *Id.* at 6. On September 17, 2014, Modus removed this action to this Court, on the grounds of diversity of jurisdiction. Dkt. No. 1 at 1. Both parties consented to the jurisdiction of a magistrate judge. Dkt. Nos. 7-8.

Because the notice of removal did not adequately allege the citizenship of Modus by failing to allege the citizenship of the members and any sub-members of the LLC, the Court ordered Modus to show cause why the removal is proper. Dkt. No. 5. Modus timely responded to the order to show cause, asserting that complete diversity of citizenship exists between Nimbus and Modus because Nimbus is a citizen of California and Modus is a citizen in every state where its owners/members are citizens, namely South Carolina and Washington, DC. Dkt. Nos. 9-10. The amount in controvery is also satisfied as the complaint alleges that Nimbus is entitled to damages in the amount of $94,375, exclusive of interest and costs. Dkt. No. 1-1 at 6. The Court finds that it has subject matter jurisdiction over this action and discharges the order to show cause.

## II. LEGAL STANDARD

Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011). Absent one of the traditional bases for jurisdiction, the Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits where, as here, there is no applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). District courts in California may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the

Constitution. Cal. Civ. Proc. Code § 410.10.

The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction is proper. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). Where no evidentiary hearing is held regarding personal jurisdiction, "the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Nonetheless, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). In considering whether personal jurisdiction is proper, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction. General jurisdiction exists when a defendant is domiciled in the forum state or his activities in the forum are "substantial" or "continuous and systematic." *Panavision*, 141 F.3d at 1320 (internal quotation marks omitted).

When the nonresident defendant's contacts with the forum are insufficiently pervasive to subject him to general personal jurisdiction, the court must ask whether the "nature and quality" of his contacts are sufficient to exercise specific personal jurisdiction over him. *Data Disc*, 557 F.2d at 1287. A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails to establish either of them, specific personal jurisdiction over the nonresident defendant is improper. *Id.* (citations omitted). If the plaintiff satisfies the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citations and internal quotation marks omitted).

The first prong of the specific jurisdiction test is satisfied by either "purposeful availment" or "purposeful direction" by the defendant. *Brayton Purcell*, 606 F.3d at 1128; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (noting that the first step "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof"). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

Under a purposeful availment analysis, "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).

### III. DISCUSSION

**A.    This Court Does Not Have Specific Jurisdiction Over Modus.**

In determining whether a defendant has purposefully availed itself of the privileges of conducting activities in a state, courts in contract cases typically focus on "activities such as

delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Here, neither the place of delivery of the goods nor the execution of the contract was in California. Rather, the agreement expressly indicated the computer equipment was to be delivered to Reston, Virginia. Dkt. Nos. 6-1 at 9; 6-1 ¶ 13. Furthermore, the agreement was executed by an employee of Modus in Phoenix, Arizona. Dkt. No. 6-1 ¶ 12.

It is also well established that "an individual's contract with an out-of-state party alone" does not "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478 (emphasis in original omitted); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) ("the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident."). When the exercise of personal jurisdiction over a defendant is based on the execution or performance of a contract, the court must "use a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (internal quotation marks and citation omitted). Accordingly, to determine whether the purposeful availment requirement is met, the court must look to the contract's "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." *Id.*

In *Burger King*, the Supreme Court held that a defendant had purposefully availed himself of the privilege of conducting business in Florida by entering into an agreement for a franchise in Michigan. *Id.* at 487. The Court reasoned that the defendant deliberately reached out beyond Michigan and negotiated with a Florida corporation "for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Id.* at 479-80. Defendant "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida" and voluntarily accepted "the long-term and exacting regulation of his business

Case No. 14-cv-04192 NC
ORDER ON DEFENDANT'S
MOTION TO DISMISS                                8

from Burger King's Miami headquarters." *Id.* at 480.  Furthermore, defendant conducted negotiations with Burger King for five months, and obligated himself personally to contracts requiring payments that exceeded $1 million over time. *Id.* at 467, 485.  The defendant also engaged in a "continuous course of direct communication by mail and by telephone" with the plaintiff's Miami headquarters while the agreement was in effect. *Id.* at 481.

Additionally, as cases in this Circuit have held, a contract for the sale of a good that is a "one-shot affair" and does not create a substantial connection or ongoing obligations in the forum state is not sufficient to establish purposeful availment. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017-19 (9th Cir. 2008); *see also Azzarello v. Navagility, LLC*, No. 08-cv-2371 MMC, 2008 WL 4614667, at *3-5 (N.D. Cal. Oct. 16, 2008) (finding that defendant did not purposefully avail itself of the privilege of conducting business in California by receiving a $300,000 bridge loan from the plaintiff, a California resident, where the transaction was a "discrete encounter," which contemplated no further activity by either party).  Furthermore, the fact that a defendant has solicited a contract and communicated with the plaintiff in the forum state by email and telephone is also insufficient to establish purposeful availment. *See Azzarello*, 2008 WL 4614667, at *3.

Here, unlike in the *Burger King* case, the contract was not substantially negotiated.  Also unlike in *Burger King*, the parties here entered into a single, one-page contract for the purchase of computer equipment and related support.  This case is thus similar to *Boschetto* and *Azzarello* in that it involves a single transaction.  A distinguishing factor is that the transaction also involved some continuing obligations as it included the purchase of a contract obligating Nimbus to provide technical support for three years.  Nonetheless, the transaction was predominantly for the sale of computer equipment.  Furthermore, the cost of the "3 Year Basic Contract: 9-5 Support" ($5,357/year) was a small part of the total contract amount ($120,570).  The Court finds that the obligation on behalf of Nimbus to provide limited technical support does not rise to the level of the wide-ranging future consequences present in *Burger King* and does not create sufficient contacts with California to subject

Modus to personal jurisdiction.

In its opposition to Modus's motion to dismiss, Nimbus also argues that the choice-of-law and arbitration provisions of the Software License and Product Support Agreements support a finding of purposeful availment. Dkt. No. 11 at 8. In support of this argument, Nimbus relies on *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996). That case, however, is distinguishable because it arose out of an arbitration award that the non-resident defendant, a Texas corporation, obtained in California against a California corporation. *Id.* at 894. The non-resident defendant was a party to an agreement that included a provision obligating the parties to submit all disputes related to the agreement to binding arbitration in California. *Id.* at 890-91. In *Fireman's Fund*, insurers filed an action in this District seeking declaratory judgments that the non-resident defendant had no claims against them for coverage on policies issued to the California corporation, against which the non-resident defendant held an arbitration award and judgment. *Id.* The Ninth Circuit held that the non-resident defendant had purposefully availed itself of the privilege of conducting activities in California (1) by entering into an agreement with a California corporation and consenting to arbitrate disputes over that agreement in California; (2) by entering California to arbitrate its dispute with the California corporation; and (3) by participating in adversarial bankruptcy proceedings against the California corporation in the U.S. Bankruptcy Court for the Northern District of California. *Id.* at 894. The Court concluded that the non-resident defendant had not only taken advantage of services offered in California, it also had created continuing obligations between itself and residents of the forum. *Id.*

Nimbus also cites to *Panterra Networks, Inc. v. Convergence Works, LLC*, No. 09-cv-1759 RMW, 2009 WL 4049956, at *1, 3 (N.D. Cal. Nov. 20, 2009) for the proposition that the combination of the choice-of-law and arbitration provisions satisfy the purposeful availment prong. In *Panterra*, the dispute arose out of a distributorship agreement that provided for arbitration in California and that was governed by California law. *Id.* The Court held that the non-resident defendant "purposefully availed itself of the benefits of

California law such that the court may exercise personal jurisdiction over [the non-resident defendant] *on a dispute arising out of the agreement*." *Id.* at *3 (emphasis added). *But see Foster v. Device Partners Int'l LLC*, No. 12-cv-02279 DMR, 2012 WL 6115618, at *6 (N.D. Cal. Nov. 21, 2012) *report and recommendation adopted,* No. 12-cv-02279 SC, 2012 WL 6479235 (N.D. Cal. Dec. 10, 2012) (declining to find that non-resident defendant consented to personal jurisdiction for all causes of action relating to an agreement simply because the agreement included a clause requiring the parties to arbitrate disputes in San Francisco).

Here, unlike in *Fireman's Fund* and *Panterra*, the dispute arises out of a purchase order agreement that does not itself contain a California arbitration or choice-of-law provisions. Rather, Nimbus is arguing that the Court should find purposeful availment based on the arbitration and choice-of-law provisions of two other agreements—the Software License and Product Support Agreements that were part of the same transaction. The Court is not persuaded by this argument. The declaration submitted by Nimbus merely shows that the Software License Agreement was provided to Modus when Modus received the products, and that the Product Support Agreement was also delivered to Modus. Nimbus has not shown what actions Modus took to enter into these agreements, or that Modus was even aware of the arbitration and choice-of-law provisions before or at the time it entered into the contract to purchase the products from Nimbus. The Court finds that Nimbus has not met its burden to show purposeful availment.

Moreover, even if Modus's conduct in agreeing to the California arbitration and choice-of-law provisions in the Software License and Product Support Agreements were sufficient to establish purposeful availment, they do not satisfy the second prong for specific jurisdiction. Under that prong, the Ninth Circuit uses the "but for" test to determine whether a particular claim arises out of the forum-related activities. *Fireman's Fund*, 103 F.3d at 894 (holding that the test is met where a direct nexus exists between defendant's contacts with the forum state and the cause of action). Here, Nimbus is suing Modus for failing to pay the outstanding balance under the purchase order contract. Nimbus is not

alleging that Modus breached its obligations under the Software License Agreement or the Product Support Agreement. The Court finds that the nexus between Modus's forum-related activities and the claim brought by Nimbus is too attenuated to support the exercise of specific jurisdiction.

## B.     Nimbus's Request for Jurisdictional Discovery Is Not Justified.

Nimbus requests that the Court permit limited discovery on the jurisdictional issue to determine to what extent Modus does business in California, if the Court determines that Modus is not subject to specific jurisdiction in California. Dkt. No. 11 at 13. "Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc,* 557 F.2d at 1285 n.1). "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." *Pebble Beach*, 453 F.3d at 1160 (quoting *Terracom v. Valley Nat. Bank,* 49 F.3d 555, 562 (9th Cir. 1995)).

Here, Nimbus does not contend that the Court has general jurisdiction over Modus and alleges no facts indicating that Modus's contacts with California are substantial or continuous and systematic. While Nimbus challenges some of the jurisdictional facts alleged by Modus as "not helpful," Nimbus has failed to controvert Modus's showing that general jurisdiction is inappropriate. Nimbus's request is based entirely on the speculation that discovery might reveal facts that support general jurisdiction. Accordingly, the Court finds that Nimbus has not established that jurisdictional discovery is justified. *See, e.g.*, *Boschetto*, 539 F.3d at 1020 (holding that district court did not abuse its discretion in denying request for discovery that was based on "little more than a hunch that it might yield jurisdictionally relevant facts"); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding that district court did not abuse its discretion by refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' that discovery will enable them to demonstrate

sufficient California business contacts to establish the court's personal jurisdiction").

**C.     The Court Transfers This Action to the District of Columbia.**

When a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962)); *see also Winery v. Graham*, No. 06-cv-3618 MHP, 2007 WL 963252, at *7-8 (N.D. Cal. Mar. 29, 2007). The Court finds that this action could have been brought in the United States District Court for the District of Columbia, as Modus's principal place of business is in Washington, DC. *See* 28 U.S.C. § 1391(b)(1) (providing that a civil action may be brought in "a judicial district in which any defendant resides"); Dkt. No. 6 at 19 (conceding that Modus would be subject to general jurisdiction in the District of Columbia). The Court finds that transfer of this action to the District Court for the District of Columbia is in the interest of justice.

## IV. CONCLUSION

The Court grants Modus's motion to dismiss in part, finding that the Court does not have personal jurisdiction over Modus. In light of this finding, the Court does not reach the motion to dismiss for improper venue. The Court transfers this case to the United States District Court for the District of Columbia for all further proceedings. The Clerk of Court shall transfer the file to the Clerk of Court for the District Court for the District of Columbia forthwith.

IT IS SO ORDERED.

Date: December 29, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge